# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KENNETH HOUCK, # 06743-015,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 16-cv-1396-JPG** |
| | ) | |
| **USA,** | ) | |
| **MAUREEN BAIRD,** | ) | |
| **RANDALL PASS,** | ) | |
| **SLOOP,** | ) | |
| **FEDERAL BUREAU of PRISONS,** | ) | |
| **A. MARQUEZ,** | ) | |
| **J.M. POWERS,** | ) | |
| **JOHN DOE 1 (Correctional Officer),** | ) | |
| **JOHN DOE 2 (Correctional Officer),** | ) | |
| **C/O LANG,** | ) | |
| **C/O WOOLRIDGE,** | ) | |
| **DR. COOK,** | ) | |
| **J. WEBER,** | ) | |
| **LT. BROOKS,** | ) | |
| **JOHN DOE 1 (Lieutenant),** | ) | |
| **JOHN DOE 2 (Lieutenant),** | ) | |
| **LT. MASH,** | ) | |
| **LT. McMILLON,** | ) | |
| **LT. DELOIA,** | ) | |
| **MR. MEADE,** | ) | |
| **MS. BAGWELL,** | ) | |
| **LESLIE BROOKS,** | ) | |
| **MS. CASTELLANO,** | ) | |
| **MS. G. CREWS,** | ) | |
| **MS. HARBISON,** | ) | |
| **JOHN DOE (SIS Lieutenant),** | ) | |
| **and RESERVED,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion, brings this action for

alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also asserts several claims under the Federal Tort Claims Act ("FTCA"), as well as claims based on other statutes. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate

abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the allegations in Plaintiff's complaint, the Court deems it appropriate to exercise its authority under § 1915A and the Federal Rules of Civil Procedure by severing certain claims and dismissing others.

## The Complaint

Plaintiff's 41-page Complaint lists 19 individual Defendants, in addition to 5 John Doe Defendants, the United States of America, and the Federal Bureau of Prisons. The statement of claim spans 22 pages (Doc. 1, pp. 13-34), and Plaintiff enumerates 19 separate claims, including violations of his Fifth Amendment rights to due process, equal protection, and access to the courts; First Amendment rights to freedom of speech and expression; Eighth Amendment right to adequate medical care; and tort claims including defamation, violation of the Federal Privacy Act and the "American Rehabilitation Act," official misconduct, medical negligence, willful and wanton misconduct, conspiracy/aiding and abetting, and intentional infliction of emotional distress. (Doc. 1, pp. 35-40).

Plaintiff was convicted of Transportation of Child Pornography. (Doc. 1, p. 14). As a sex offender, he is subject to conditions and restrictions outlined in his individual "Correctional Management Plan" (CMP) produced by officials in the Sex-Offender Management Program (SOMP) at Marion. (Doc. 1, p. 10, 13-14). The CMP is supposed to help the offender develop self-control and become a law-abiding citizen, and should be tailored to the individual's "Initial Risk Assessment" and Pre-Sentencing Investigation Report, as well as his records during his

incarceration.  Plaintiff complains, however, that much of the CMP contains canned, generalized statements and rules, which impose harsher treatment and restrictions on sex offenders as compared with other inmates.  Additionally, he complains that in his case, his CMP is contaminated with false information dating back to his incarceration at Englewood, Colorado – specifically, the statement that he possessed "pictures of prepubescent children," which he states were "purposely miscategorized" by prison staff.  The photos actually depicted Plaintiff's own (clothed) family members at a wedding party, as well as family members jumping off a large rock into a swimming lake.  (Doc. 1, pp. 14-15).  A SOMP official at Englewood was found to have engaged in "staff misconduct" for "corrupting" Plaintiff's records, and he has a pending lawsuit in Colorado over the matter.  *Id.*

Plaintiff arrived at Marion on approximately August 15, 2015.  Dr. Weber (a SOMP treatment specialist at Marion) "removed" Plaintiff's old CMP that was prepared at Englewood. That old CMP had banned Plaintiff from corresponding with pen-pals outside of prison, despite the fact that Plaintiff's offense did not involve any communication with or solicitation of a minor.

On September 18, 2015, Marion official(s) discovered that Plaintiff, who identifies as homosexual, had placed an ad in a pen-pal publication for gay men.  (Doc. 1, pp. 15-17).  He asserts that the ad was carefully worded to solicit correspondence only from other adult men, specifying that the correspondence should not involve discussion of anything illegal.  He maintains that his precautions showed that he conformed to "model-like inmate behavior."  (Doc. 1, p. 15).  However, unidentified officials labeled Plaintiff's ad as seeking "sexually explicit communications with foreign contacts through a pen-pal service."  (Doc. 1, p. 16).

Dr. Weber conducted a new "risk-assessment" and determined that Plaintiff's pen-pal ad

deliberately violated the old CMP, and took advantage of her having removed that former document. (Doc. 1, pp. 16-17). Because Plaintiff has an interest in men of Asian or Hispanic ethnicity, Dr. Weber found he had a "pre-occupation or interest in a group of people solely because of them being generally at greater risk for exploitation." (Doc. 1, p. 16). Plaintiff disputes Dr. Weber's "exploitable" label on this group as false and overbroad. He further asserts that he has a First Amendment right to correspond with adults outside prison, and his attraction to men of particular ethnic groups does not detrimentally reflect on his rehabilitation. His attempt to initiate correspondence should not have been viewed as a violation of his CMP, and he should not be restricted from soliciting adult pen pals or corresponding with them.

After Plaintiff received the September 2015 (new) CMP, he requested research information, books, and documents that were cited in his CMP from Dr. Cook (the SOMP Coordinator) in an effort to learn the basis for the SOMP's policies used to manage the sex-offender population. (Doc. 1, p. 18). He also submitted a Freedom of Information Request to the Bureau of Prisons. However, Dr. Cook and the BOP denied Plaintiff's information requests. (Doc. 1, p. 18).

Plaintiff asserts that his SOMP records contain false information that was intentionally placed there by prison staff at Englewood, and designed to portray him as a "deviant pervert who 'exhibits sexual behaviors and preoccupations different than any acceptable standard.'" (Doc. 1, p. 19). He fears these falsehoods are meant to provide a basis to civilly commit him. Further, he is suffering actual harm from the inaccurate information because it has prompted SOMP staff at Marion to "write him up" as they believe he "is everything that was written about him by Englewood staff." (Doc. 1, p. 20). Plaintiff submitted an Administrative Remedy Request to Acting Warden Powers challenging the false information, but Powers responded by "rehashing"

the "corrupted records," which are the subject of Plaintiff's ongoing litigation in Colorado. *Id.* Plaintiff asserts that the maintenance of this false information in his records creates a Title V claim and a Federal Privacy Act claim. *Id.*

Next, Plaintiff takes issue with an incident report filed against him on January 1, 2016, for possessing commercial photos and not conforming to a program. (Doc. 1, p. 20-25). Plaintiff had ordered the photos from a company that markets them to inmates, and advertises them as complying with BOP rules. The photos were of adult male models who appeared to be gay; no nudity was depicted. Mailroom officials inspected the photos when they were delivered to Marion, and most were approved to be delivered to Plaintiff. A few were rejected. C/O Lang confiscated the approved photos from Plaintiff some 7-10 days after he received them, and gave them to Lt. Deloia for possible disciplinary action. (Doc. 1, p. 21). Lt. Deloia labeled the photos as "contraband," then proceeded to verbally mock, belittle, and degrade Plaintiff for being gay and collecting such photos. Plaintiff responded that the photos had been approved, and refused to mail them home or shred them, stating that they would be evidence in a court proceeding. Upon learning that Plaintiff was a sex offender, Deloia forwarded the photos to the SOMP staff rather than issue a disciplinary write-up himself. Ultimately, Deloia discarded the photos.

Following this encounter, Deloia spread information to other prison staff that Plaintiff was gay, and falsely stated that Plaintiff was caught possessing pictures of naked men. C/O John Doe #1 and C/O John Doe #2 questioned Plaintiff in front of other inmates about the "gay photos" and if he was "that way," and then told him, "No fags allowed here!" while laughing at Plaintiff. This incident placed Plaintiff at risk for sexual assault or further sexual harassment from other inmates or staff. (Doc. 1, p. 24). Plaintiff filed a complaint against Deloia for disclosing Plaintiff's sexual orientation and the "gay" photos to other employees.

Plaintiff also raises claims stemming from the rejection of his inter-library loan requests to borrow books which Mr. Meade (Education Tech) deemed "inappropriate" or "potentially risk-relevant." (Doc. 1, p. 25-26). Only 1 of Plaintiff's approximately 50 book requests in the year starting with August 2015 was approved (a book on font styles). Every gay-themed book was rejected, along with a number of titles which did not indicate any inappropriate theme. Castellano (Education Supervisor) warned Plaintiff to be more careful when selecting a title. However, Plaintiff has no internet access to view book reviews or descriptions before making his inter-library loan requests. He selected books based on titles he found listed in a periodical.

Meade, after denying Plaintiff's book requests, sent notices of the selections he deemed "inappropriate" to the SOMP department. Plaintiff objects that Meade is not qualified to determine whether an item is inappropriate for an inmate in the SOMP. Plaintiff asked Dr. Cook to remove the referrals submitted by Meade, but Cook refused. Plaintiff's request to remove his CMP was also rejected; Plaintiff claims the rejection was largely because of the referrals made by Meade. SOMP staff member Dunning (who is not included as a Defendant) labeled Meade's referrals as "documented 'violations.'" (Doc. 1, p. 26). Plaintiff disputes that the requested books violated his CMP, and contends that the restrictions on his permissible reading material violate his rights to free speech and to be free of discrimination.

The next section of the statement of claim addresses Plaintiff's medical conditions, and prison officials' failure to adequately treat him. (Doc. 1, pp. 27-33). He suffers from hammertoe syndrome (HTS), "drop-foot," and restless leg syndrome with periodic limb movement (RLS-PLM). These conditions cause significant pain. Prior to his arrival at Marion, Plaintiff's HTS diagnosis had been recognized, and he had been approved to have a consultation with outside specialists regarding possible treatment – but those consultations were cancelled by a doctor at

Englewood (Dr. Kraus, who is not a Defendant herein).

The Marion medical department did not recognize the severity of the HTS condition and ignored his need for pain treatment. Plaintiff did receive Elivil for pain, but it was not effective. Additionally, Harbison and Bagwell (Health Care Administrators) took away the cane that Plaintiff had been using according to the recommendation of his surgeon. The reason they took away the cane was because Plaintiff occasionally did not use it – but Plaintiff contends his doctor told him to go without it when he could, in order to strengthen his foot and slow the progression of his drop-foot condition.

Plaintiff consulted PA Brooks several time regarding the pain in his toes from HTS, but no new treatment was attempted. Plaintiff attempted to see Dr. Pass (clinical director) about the HTS several times without success. He was finally referred to a podiatrist in August 2016, who recommended he see a nerve specialist for pain, attend Pain Management, and have a surgical consult regarding non-union of his tibia and fibula, and corrective surgery for the HTS. (Doc. 1, pp. 29, 32). None of these recommendations have been followed, however, and he was notified that the referral for surgery was denied. (Doc. 1, p. 32).

Plaintiff continues to have serious pain on a daily basis. Plaintiff claims that the BOP failed to properly treat him, and Dr. Pass "knew or should have known" that his serious medical needs were not being treated. (Doc. 1, p. 30).

Plaintiff's RLS-PLM, a progressive disease, causes intense spasms and pain in his legs and arms, which may last for 4 hours. (Doc. 1, pp. 30-31). His symptoms have been effectively treated with Pramipexole. However, this medication was suddenly discontinued on June 2, 2016, while Plaintiff was in the SHU. It is not clear when or if this prescription was restored. (Doc. 1, pp. 31-21).

Finally, Plaintiff asserts that he has been denied access to the courts, because Education Department staff have refused to provide him with information on state tort laws. (Doc. 1, pp. 33-34). He requested this material in order to properly prepare his claims under the FTCA. Along with this complaint, Plaintiff states that several times, he has received legal mail that had been opened outside his presence. Approximately 8-15 court documents were delivered to him after somebody had already opened them.[1] He complained in writing to the mailroom, but the problem has continued.

Based on the allegations above, Plaintiff articulates 19 claims, some of which are based on alleged constitutional violations, and others which involve tort or statutory-based claims. He seeks monetary damages. (Doc. 1, p. 41).

### Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Claims based on the Fifth Amendment rights to equal protection and due process (identified in the Complaint as Counts 1, 5, 6, and 8) against Weber and Cook for including improper information in Plaintiff's CMP that singled him out for differential treatment based on his status as a homosexual person, and against Lang, Deloia, John Doe C/O #1, John Doe C/O #2, Meade, and Castellano for restricting his access to publications and other materials that heterosexual inmates are allowed, based on the CMP;

---

[1] Plaintiff does not articulate a claim based on the alleged improper opening of his "legal" mail. The Court notes, however, that mail from a court is considered public record, and is not in the same category as correspondence between an inmate and an attorney. *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Therefore, Plaintiff's rights were not violated when official court mail was opened outside his presence.

**Count 2:** First Amendment Retaliation claim (identified in the Complaint as Count 2);

**Count 3:** Claim for denial of access to the courts (included in the claim identified in the Complaint as Count 8), against Meade for reporting his inter-library loan requests to the SOMP staff, and for the denial of his request for state tort law information;

**Count 4:** First Amendment claim for violations of Plaintiff's rights to free speech and association (identified in the Complaint as Count 4) against Weber, Lang, Deloia, John Doe C/O #1 and John Doe C/O #2, Meade, Cook, and Castellano, for preventing Plaintiff from writing to or soliciting correspondence with pen pals, possessing certain photographs, or accessing certain written material;

**Count 5:** Tort claim for defamation (identified in the Complaint as Count 3) against the United States, for placing false and slanderous comments into Plaintiff's SOMP records;

**Count 6:** Claim under the Privacy Act (5 U.S.C. § 552a(e)(5)) (identified in the Complaint as Count 9) against Powers and the Bureau of Prisons, for intentionally including false information in Plaintiff's SOMP records;

**Count 7:** Tort claim for official misconduct (identified in the Complaint as Count 12) against the United States;

**Count 8:** Tort claim for aiding and abetting, and conspiracy (identified in the Complaint as Count 18) against the United States;

**Count 9:** Tort claim for intentional infliction of emotional distress (identified in the Complaint as Count 19) against the United States;

**Count 10:** Eighth Amendment claims for deliberate indifference to serious medical needs (identified in the Complaint as Counts 11, 14, and 15) against PA Brooks, Pass, Harbison, and Bagwell, for discontinuing and/or withholding necessary prescription medication, and withholding and/or denying treatment recommended by a specialist, including Plaintiff's cane;

**Count 11:** Tort claim for medical negligence and willful and wanton misconduct relating to Plaintiff's medical needs (identified in the Complaint as Counts 7, 16, and 17) against the United States, for allowing improper psychological referrals to be made by Meade and for denying medication and treatment;

**Count 12:** Claim under the Privacy Act (5 U.S.C. § 552a(e)(5)) (identified in the Complaint as Count 10) against the Bureau of Prisons, for failing to accurately

document Plaintiff's pain, deformities, and other conditions in his medical records;

**Count 13:** Claim under the Rehabilitation Act (29 U.S.C. § 701) (identified in the Complaint as Count 13) relating to the denial of medical treatment.

Plaintiff's constitutional claims can generally be divided into two distinct groups: First, the claims that arose from Plaintiff's sex-offender-related restrictions and alleged differential treatment (Counts 1-9), and second, the claims related to his medical treatment (or non-treatment) (Counts 10-13). Both groups of claims include tort claims that Plaintiff brings against the United States of America under the Federal Tort Claims Act, as well as a claim against the BOP.

Counts 1-9 shall remain in the instant action, and the merits of these claims shall be reviewed in this order. As shall be explained below, out of this first group, only Counts 1 and 4 survive threshold review under § 1915A. Because Counts 2, 3, 5, 6, 7, 8, and 9 shall be dismissed at this time pursuant to § 1915A, no claims will remain out of Counts 1-9 (the sex-offender-related claims) against the United States of America or the Bureau of Prisons. Further, the medical-related claims in Counts 10-13 involve different Defendants (Brooks, Pass, Harbison, Bagwell, the United States, and the Bureau of Prisons) from those who shall remain in this action associated with Counts 1 and 4 (Weber, Cook, Lang, Deloia, John Doe C/O #1 and #2, Meade, and Castellano).

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). As a result of the merits review below, the remaining claims in

Plaintiff's Complaint represent two sets of unrelated claims against different defendants: Those related to the sex-offender restrictions in Counts 1 and 4, and those based on medical issues in Counts 10-13.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Counts 10-13 into a separate action, and shall open a new case with a newly-assigned case number for those claims. A separate merits review shall be conducted in the severed case after it is opened and assigned to a judge. Plaintiff shall be assessed a new filing fee for the severed case.

### Merits Review of Counts 1-9 Pursuant to 28 U.S.C. § 1915A

At the outset, the Court notes that in his statement of claim, Plaintiff failed to include any allegations against a number of the Defendants whom he named as parties to the action. Plaintiff lists Baird (Marion Warden), Sloop, Marquez, Woolridge, Lt. Brooks, John Doe Lieutenants #1 and #2, Mash, McMillon, Crews, and the John Doe SIS Lieutenant among the Defendants (Doc. 1, pp. 8, 11-13), but makes no allegations against any of them in the body of the complaint or in his articulation of the 19 claims listed in the pleading.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him or her. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). And in the case of those defendants in supervisory positions, the doctrine of

*respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

Here, Plaintiff has not alleged that any of the above Defendants is "personally responsible for the deprivation of a constitutional right," *id.*, and a Defendant cannot be liable merely because he supervised a person who caused a constitutional violation. In order to state a claim against an individual prison official, Plaintiff must describe what each named Defendant did (or failed to do), that violated his constitutional rights. Because the Complaint does not disclose what involvement any of the Defendants listed above might have had in the alleged violations, Defendants Baird, Sloop, Marquez, Woolridge, Lt. Brooks, John Doe Lieutenants #1 and #2, Mash, McMillon, Crews, and the John Doe SIS Lieutenant will be dismissed from this action without prejudice.

Additionally, Plaintiff cannot bring constitutional claims against the Federal Bureau of Prisons. The BOP is a governmental unit, not an individual. Only individual persons may be sued in a civil rights action brought pursuant to *Bivens*. *See FDIC v. Meyer*, 510 U.S. 471, 475; 483-86 (1994) (sovereign immunity shields the federal government from suit absent a waiver; a *Bivens* action permits suit only against an individual who is an agent of the federal government). Therefore, all civil rights claims against the Federal Bureau of Prisons shall be dismissed with prejudice. The BOP is likewise not a proper Defendant in Plaintiff's Federal Tort Claims. The United States of America, which Plaintiff has included as a party, is the only proper Defendant in an action brought pursuant to the FTCA. *See* 28 U.S.C. § 2679(b); *FDIC v. Meyer*, 510 U.S. 471 (1994). Plaintiff's claims against the BOP in Count 6 (Privacy Act) shall be dismissed with prejudice as explained below.

**Count 1 – Fifth Amendment Due Process and Equal Protection Claims**

Plaintiff asserts that because he is homosexual, he has been treated differently from non-homosexual prisoners in the SOMP program in several ways. First, his CMP rules and restrictions (maintained by Weber and Cook) were not grounded upon his Pre-Sentencing Investigation Report and "Initial Risk Assessment," unlike the CMP's of other prisoners. He claims he was singled out for harsher restrictions contained in his CMP, because of his open declaration of homosexuality. He suffered discrimination at the hands of Lang, Deloia, John Doe C/O #1 and #2, Meade, and Castellano, who denied him access to publications and other materials that heterosexual inmates are allowed, and subjected him to "write-ups" and verbally mocked and degraded him due to his sexual orientation. Due to the discriminatory reports/referrals by Meade to the SOMP staff regarding his book requests, Plaintiff's CMP was extended for another year, and he had no recourse to contest that consequence.

The Supreme Court has observed that:

> The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws. . . . While the Fifth Amendment itself withdraws from Government the power to degrade or demean in the way this law does, the equal protection guarantee of the Fourteenth Amendment makes that Fifth Amendment right all the more specific and all the better understood and preserved.

*United States v. Windsor*, 133 S. Ct. 2675, 2695-96, 186 L. Ed. 2d 808 (2013) (holding federal Defense of Marriage Act's unequal treatment of same-sex married couples unconstitutional under the Fifth Amendment) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499-500, (1954); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 217-218 (1995)). Cases discussing the Fourteenth Amendment rights of state inmates are therefore informative as to the scope of a possible equal protection claim in a *Bivens* action brought by a federal inmate.

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). At this early stage, Plaintiff's facts support a possible equal protection claim under the Fifth Amendment.

Additionally, Plaintiff's equal protection claim may be considered as a "class-of-one" discrimination claim, in which a government actor arbitrarily and irrationally singles out an individual for adverse treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Brunson v. Murray*, 843 F.3d 698, 705-08 (7th Cir. 2016); *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Plaintiff's Complaint suggests that he was targeted for unusual restrictions on his activities, "write-ups" of violations, and other adverse action because he is a homosexual. Plaintiff's discussion of his interactions with Lang, Deloia, and the John Doe C/O's indicate discriminatory animus toward him.

At this early stage of the case, Plaintiff's Fifth Amendment claims in **Count 1** survive threshold review under § 1915A, and may proceed against Weber, Cook, Lang, Deloia, John Doe C/O #1, John Doe C/O #2, Meade, and Castellano.

## Dismissal of Count 2 – Retaliation Claims

A retaliation claim may arise when a prisoner engages in protected activity such as filing a grievance, complaint, or lawsuit, and in response a prison official takes some adverse action against the prisoner that is likely to deter the prisoner from such activity in the future. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

In Plaintiff's case, he asserts that he experienced several incidents of "retaliation" by unspecified "staff," but does not explain which incidents gave rise to his retaliation claim. (Doc. 1, p. 35). Instead, he references the entire statement of claim. The Court cannot identify any chronology of events that plausibly supports a claim that some protected activity on Plaintiff's part motivated a Defendant to retaliate against him. Plaintiff mentions complaints and grievances he submitted, but each of those was filed *after* he experienced some adverse action connected to his status as a sex offender or a homosexual, such as the confiscation of his photos, denial of access to books, and inclusion of false information in his records. He does not specify any adverse action that appeared to have been triggered by his filing of a grievance or complaint. Further, he does not identify any Defendant who is alleged to have taken retaliatory action against him for engaging in a protected activity.

For these reasons, the retaliation claim in **Count 2** shall be dismissed at this time without prejudice.

## Dismissal of Count 3 – Access to the Court

Plaintiff articulates his claim for denial of access to the court as arising from the fact that

his inter-library loan book requests were reported by Meade to the SOMP staff, who deemed the titles to be inappropriate, and relied on those reports to extend Plaintiff's CMP for another year. (Doc. 1, p. 35). (These facts also are the basis for one of Plaintiff's due process claims in Count 1 above). Elsewhere in the statement of claim, Plaintiff states that Education Department staff refused to provide him with information on state tort laws, which he needed in order to prepare his FTCA claims. (Doc. 1, pp. 33-34).

In order to maintain a claim for denial of access to the courts, Plaintiff must be able to show "some quantum of detriment" caused by the Defendant(s) that "result[ed] in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). There must be a "connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).

The only legal claims referenced in the Complaint which might relate to Count 3 are Plaintiff's tort claims. The Court will presume that he is referring to the FTCA claims he has brought in the instant action (see Counts 5, 7, 8, 9, and 11), since he does not mention any other case. The reporting of book title requests and extension of Plaintiff's CMP for a year does not suggest any connection to a pending or contemplated lawsuit, thus, shall not be considered further in the context of the access to court claim.

The Court cannot discern any interruption, detriment, or inability to bring a tort claim resulting from the alleged denial of legal materials in this case. Plaintiff has included multiple tort claims in this action, and appears to have brought these claims in a timely manner.[2] The

---

[2] The Court notes, however, that Plaintiff did not include with the Complaint his notice of the final administrative denial of any of his Federal Tort Claims. *See* 28 U.S.C. § 2675(a). If he is not able to

merits review below (and in the severed case) will determine whether any of these claims may proceed. That question will depend on the facts of Plaintiff's case and the applicable legal precedent. Plaintiff had the ability to present the relevant facts underlying his claims regardless of whether he was able to obtain any of the requested library materials, so there is no indication that his access to the court was hindered, or that his claims were prejudiced by the Defendants' denial of those requests.

Accordingly, the access to court claim in **Count 3** shall be dismissed without prejudice.

## Count 4 – First Amendment Free Speech Claims

Plaintiff bases this claim on the restrictions placed on his correspondence with pen pals (and on his attempt to advertise for pen pals) by Weber and Cook, the confiscation of his photographs by Lang and Deloia, and the denials of his requests for books/publications by Meade and Castellano. Plaintiff's factual summary indicates that the prohibitions on possessing/accessing the photos and books were approved or at the direction of Weber and Cook, under the CMP they controlled. These restrictions implicate Plaintiff's First Amendment right to free speech, as well as his right to freedom of association with persons outside the prison walls.

In order to withstand constitutional scrutiny, a prison policy that restricts a prisoner's constitutional rights must be reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Courts consider four factors in making this "reasonableness" inquiry: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether inmates have an alternative means of exercising the right; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready,

---

demonstrate exhaustion of his administrative remedies on each of these claims, they will be subject to dismissal.

easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Id*.

Prison inmates retain certain First Amendment rights during their incarceration, however, reasonable restrictions on those rights may be upheld. As the Supreme Court has observed:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. . . . [citations omitted]. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. [citations omitted]. Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (restrictions on inmates' visitors were rationally related to legitimate penological objectives and did not violate the Constitution).

While personal visits to inmates may be curtailed, the ability of prisoners to communicate with outsiders through the U.S. mail enjoys substantial protection. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (First Amendment "applies to communications between an inmate and an outsider"). Prisoners have a First Amendment right both to send and receive mail in communication with private individuals outside prison, as well as to correspond with the courts and attorneys. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Restrictions on a prisoner's right to correspond with pen pals must therefore be reasonable under the *Turner* factors. Further factual development will be necessary in order to determine whether the restrictions on Plaintiff's correspondence violate his First Amendment rights. Therefore, the portion of the claim based on his pen-pal restrictions shall proceed against Weber and Cook.

A prisoner's right to possess photographs may be restricted if the content of the photos threatens institutional security. Prison officials are afforded substantial deference in making decisions about what actions or circumstances present a threat to prison security and inmate rehabilitation. *Pell v. Procunier*, 417 U.S. 817, 827 (1974). Here, Plaintiff claims that he ordered photos of clothed male models, which did not include any depiction of nudity. He

asserts that he should have been allowed to keep the photographs that were delivered to him after the mailroom staff screened them and approved the content. At this stage, the rationale for confiscating the photos and refusing to return them to Plaintiff has not been fully explained or reviewed in light of the *Turner* factors. This portion of Plaintiff's First Amendment claim may also proceed for further review, against Lang, Deloia, Weber, and Cook.

It is not clear whether Plaintiff intended to bring a claim under the First Amendment against the John Doe C/O's #1 and #2. Based on the factual summary, those 2 officers were not involved in the confiscation or retention of the photos. Instead, they verbally harassed Plaintiff about the photos after the confiscation incident. Because it appears that the John Doe C/O's did not take part in removing the photos from Plaintiff's possession or deciding whether he would be allowed to have them, the facts do not support a First Amendment claim against John Doe C/O #1 or John Doe C/O #2. They shall therefore be dismissed from Count 4 without prejudice.

Finally, Plaintiff was denied access to nearly 50 books and/or other publications that he requested through the inter-library loan program. He alleges that the denials were based on the books' presumed content, which had to do with "gay themes." In some cases, Plaintiff was unaware of the content.

The Seventh Circuit has stated that "the arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)). As with the other portions of Plaintiff's claim, prison officials' restrictions on the reading material which Plaintiff was allowed to have must be reasonably related to legitimate penological interests. In order to determine whether the library denials satisfied the *Turner*

factors, this portion of the claim in **Count 4** shall also proceed for further consideration, against

Meade, Castellano, Weber, and Cook.

To summarize, **Count 4** shall proceed against Weber, Cook, Lang, Deloia, Meade, and

Castellano.

### Dismissal of Count 5 – FTCA - Defamation

Plaintiff brings a defamation claim based on his assertion that officials "damaged his

name and image of character through lowering the estimation of the Plaintiff in the minds of

others based upon defamatory and slanderous comments into Plaintiff's SOMP records." (Doc.

1, p. 35).

Federal prisoners may bring suit against the United States under the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for injuries they sustain while incarcerated. *See Palay*

*v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). However, The FTCA specifically excludes

certain claims, including those "concerning the intentional torts of 'assault, battery, false

imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

misrepresentation, deceit, or interference with contract rights'" unless committed by a

Government officer who is empowered to make arrests. 28 U.S.C. § 2680(h). Under this section

of the statute, Plaintiff's defamation claim is not authorized to be brought pursuant to the FTCA.

Further, defamation is not a constitutional claim that may be brought against an

individual federal Defendant within a *Bivens* action. **Count 5** shall therefore be dismissed from

this action with prejudice.

### Dismissal of Count 6 – Privacy Act

Plaintiff asserts that the BOP has violated its obligation under the Privacy Act, 5 U.S.C.

§ 552a(e)(5), to maintain accurate inmate records on him. Instead, he claims that his SOMP

records were "intentionally inaccurate to cause damages via prohibiting him from his liberty interests." (Doc. 1, p. 38). Plaintiff also connects Acting Warden Powers to this claim, noting that in response to Plaintiff's grievance challenging the false information, Powers merely responded by "rehashing" the suspect information. (Doc. 1, p. 20). This claim does not survive § 1915A review.

The Privacy Act provides for a private cause of action where an individual may recover monetary damages for a violation. 5 U.S.C. § 552a(g)(1). However, the BOP, as a law enforcement agency, has exercised its statutory option to exempt a number of its records from certain Privacy Act requirements. *See* 5 U.S.C. § 552a(j) (authorizing agencies to make exemptions); 28 C.F.R. § 16.97(a); (j) (listing BOP's exempt records); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) ("The BOP has exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5)."). *See also Blackshear v. Lockett*, 411 F. App'x 906, 908 (7th Cir. 2011) (damages remedy is no longer available after BOP adopted exemptions to Privacy Act). The exempt BOP records include the Inmate Physical and Mental Health Record System as well as the Inmate Central Records System. As a result of these exemptions, a plaintiff wishing to bring suit based on inaccurate or substandard recordkeeping by the BOP no longer has a remedy in court, and cannot recover damages. *See Martinez*, 444 F.3d at 624 (upholding dismissal of Privacy Act claims against BOP because Inmate Central Record System was exempt from the Privacy Act's accuracy requirement); *Earle v. Holder*, 815 F. Supp. 2d 176, 181-82 (D.D.C. 2011), *aff'd*, No. 11-5280, 2012 WL 1450574 (D.C. Cir. Apr. 20, 2012).

A Privacy Act claim, where one exists, cannot be brought against an individual official such as Powers. *See Doe v. Chao*, 540 U.S. 614, 617-18 (2004) ("The United States is subject to

a cause of action" for a federal agency's violation of the Privacy Act).    Additionally, an administrator's role in responding to a grievance does not result in liability in a civil rights claim. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Because the allegations against Powers do not suggest that he was "personally responsible for the deprivation of a constitutional right," *see Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), no claim is stated against him.

Under this authority, Plaintiff's Privacy Act claim in **Count 6** fails to state a claim upon which relief may be granted, and shall be dismissed with prejudice.

### Dismissal of Count 7 – FTCA – Official Misconduct

For this claim, Plaintiff "asserts his rights to be free from OFFICIAL MISCONDUCT, a TORTIOUS violation," and then incorporates by reference all the facts alleged in his entire statement of claim.  (Doc. 1, p. 38).  By pleading his tort claim in this manner, Plaintiff's "official misconduct" claim is a redundant catch-all count that encompasses every allegation of wrongdoing in all the other distinct claims in this action.  As such, it adds nothing to the case and sets forth no independent basis for relief.

In order to bring an FTCA claim, Plaintiff must articulate some action or inaction on the part of a federal official that would constitute a tort under Illinois law if committed by a private person.  28 U.S.C. § 1346(b)(1); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). Illinois statute criminalizes "official misconduct" by a "public officer or employee or special government agent" who:

> (1) Intentionally or recklessly fails to perform any mandatory duty as required by law; or
> (2) Knowingly performs an act which he knows he is forbidden by law to perform; or

> (3) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or
> (4) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.

720 ILCS § 5/33-3(a)(1-4) (violation constitutes a Class 3 felony and will result in forfeiture of the violator's office or employment).  However, it does not appear that Illinois has recognized a private cause of action based on this statute.  Even if it had, Plaintiff in this instance has failed to point out how any of the prison officials named herein may have violated one of the provisions of this statute.

For these reasons, **Count 7** fails to state a tort claim for official misconduct upon which relief may be granted, and shall be dismissed without prejudice.

### Dismissal of Count 8 – FTCA – Aiding & Abetting, Conspiracy

Plaintiff articulates this tort claim as follows:

> Plaintiff asserts his rights to be free from the TORTIOUS act of AIDING & ABETTING, where fellow staff support and help each other, all while maintaining a code amongst themselves to always support their fellow staff, an "US" vs. "THEM" mentality, despite the wrongs done by one or more of them, as to cover up the incident.  In many ways aspects [sic] this TORTIOUS act is also a CONSPIRACY.

(Doc. 1, p. 40).  Plaintiff then incorporates by reference all the facts and Defendants in his entire statement of claim.

In order to establish a claim for civil conspiracy under Illinois law, a plaintiff must show:

> (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.  *See McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 241 Ill. Dec. 787, 720 N.E.2d 242, 258 (1999).  "The agreement is a necessary and important element of this cause of action."  *Id.* (internal quotations omitted). "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy."

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (quoting *Adcock v. Brakegate*, 645 N.E.2d 888, 894 (Ill. 1994)).

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). Initially, the plaintiff's complaint must indicate that "the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011).

Here, Plaintiff's pleading does not point to any "meeting of the minds" among the Defendants to harm him. His assertion that prison staff "support and help each other" merely describes the type of environment that any workplace would hope to foster. His allegation that officials support each other to "cover up the incident" also does not describe a conspiracy to take action to injure him – at worst, this describes cooperation *after* the fact of some wrongful act. This sequence of events does not add up to an actionable conspiracy. Furthermore, this claim suffers from the same defect as discussed above in Count 7 (official misconduct), in that Plaintiff has thrown all the allegations in the entire Complaint into his "conspiracy" basket, and does not provide adequate notice of what particular actions support this claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

It is possible that one or more of the incidents described in the Complaint might support a conspiracy claim, but it is not the Court's job to plead Plaintiff's claims for him. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). **Count 8** shall therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

Should Plaintiff attempt to re-plead this or any other Federal Tort Claim in an amended complaint, he should take note that exhaustion of his administrative remedies is required before he may maintain a FTCA action in court. 28 U.S.C. § 2675(a). Therefore, Plaintiff is **ADVISED** to submit a copy of his "final denial of claim" letter along with any amended complaint containing a tort claim.

### Dismissal of Count 9 – FTCA – Intentional Infliction of Emotional Distress

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Thus, to serve as a basis for recovery, the defendant's conduct must be such that the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotation marks omitted). Whether conduct is extreme and outrageous is judged on an objective standard,

based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

In Plaintiff's case, he bases his claim on the Defendants' actions of:

> implementing several discriminatory restrictions based upon his known-faulty records and controlling documents resulting in determinations based on records known to be highly contested, built by staff to assemble reason for creating a CMP based off bad information rather than the proper elements required by policy.

(Doc. 1, p. 40). This claim thus is grounded on the facts discussed above under Counts 1 (equal protection/due process) and 4 (freedom of speech/association).

Plaintiff's factual statement asserts that his CMP included information that was placed there by officials at the prison in Englewood, Colorado, and which Plaintiff contends to be false. Before Plaintiff left Colorado, he challenged the faulty information in a complaint or grievance for "staff misconduct," which was sustained, and in a lawsuit, which is still pending. However, this false information continues to be included in the CMP which was revised by Marion officials (Weber and Cook). Plaintiff claims the false records contributed to his current restrictions on communication and access to certain photographs and books.

The claim for intentional infliction of emotional distress, therefore, is based on Weber and Cook's continued reliance on records from Plaintiff's former prison, placed there by fellow prison officials whose judgment the Court presumes would ordinarily be given credence by their peers at the new institution. Plaintiff contests the reliability of the information and the judgment of the officials who placed it in his records, but it appears that the truth or falsity of those records has not yet been resolved in Plaintiff's pending Colorado litigation. Rather than be considered "outrageous," the acceptance of existing prison records while continuing to evaluate and develop an updated CMP to guide staff in their dealings with Plaintiff at Marion, appears to be an approach that is well within the boundaries of civilized behavior.

For these reasons, **Count 9** for intentional infliction of emotional distress shall be dismissed without prejudice, for failure to state a claim upon which relief may be granted.

Further, because each of Plaintiff's Federal Tort Claims and the Privacy Act claim shall be dismissed, the United States of America shall be dismissed as a party to this action.

### Severance of Medical-Related Claims

As noted above, the Seventh Circuit directs that unrelated claims against different defendants belong in separate lawsuits, in order to promote orderly litigation and to ensure that prisoners pay the required filing fees for those severable claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Claims against different Defendants, which do not arise from a single transaction or occurrence (or series of related transactions/occurrences), and do not share a common question of law or fact, may not be joined in the same lawsuit. *See* FED. R. CIV. P. 20(a)(2). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21, or to dismiss improperly joined Defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims that are unrelated to Counts 1 and 4 into a separate action, and shall open a new case with a newly-assigned case number for the severed claims. Plaintiff shall be assessed another filing fee for the newly severed case. Counts 1 and 4 shall remain in this action. The medical-related claims in Counts 10-13 shall be severed into a new case. These claims will be subject to the required merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment has been made.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to a United States Magistrate Judge for further consideration as Counts 1 and 4 proceed beyond threshold review.

**Disposition**

**COUNTS 2, 3, 7, 8, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNTS 5 and 6** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **UNITED STATES of AMERICA, BAIRD, SLOOP, MARQUEZ, POWERS, WOOLRIDGE, LT. BROOKS, JOHN DOE #1 (Lieutenant), JOHN DOE #2 (Lieutenant), MASH, McMILLON, CREWS,** and **JOHN DOE (SIS Lieutenant)** are **DISMISSED** from this action without prejudice. Defendant **FEDERAL BUREAU of PRISONS** is **DISMISSED** from this action with prejudice.

**IT IS HEREBY ORDERED** that Plaintiff's medical-related claims in **COUNTS 10, 11, 12, and 13**, which are unrelated to the claims in Counts 1 and 4, are **SEVERED** into a new case. That new case shall be: Claims against **DEFENDANTS PASS, BAGWELL, LESLIE BROOKS, HARBISON, UNITED STATES of AMERICA,** and **FEDERAL BUREAU of PRISONS**.

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1)     This Memorandum and Order
(2)     The Original Complaint (Doc. 1)
(3)     Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
(4)     Plaintiff's prisoner trust fund statement (Doc. 7)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case.

**IT IS FURTHER ORDERED** that the _**only claims remaining in this action are COUNT 1 against JOHN DOE CORRECTIONAL OFFICER #1, JOHN DOE**_

_**CORRECTIONAL OFFICER #2, LANG, COOK, WEBER, DELOIA, MEADE, and**_

_**CASTELLANO; and COUNT 4 against LANG, COOK, WEBER, DELOIA, MEADE, and**_

_**CASTELLANO.**_  This case shall now be captioned as: **KENNETH HOUCK, Plaintiff, vs.**

**JOHN DOE CORRECTIONAL OFFICER #1, JOHN DOE CORRECTIONAL OFFICER**

**#2, C/O LANG, DR. COOK, J. WEBER, LT. DELOIA, MR. MEADE, and MS.**

**CASTELLANO, Defendants.**

    **IT IS FURTHER ORDERED** that Defendants **RANDALL PASS, MS. BAGWELL,**

**LESLIE BROOKS, and MS. HARBISON** are **TERMINATED** from _**this**_ action with

prejudice.

    As to **COUNTS 1 and 4**, which remain in the instant case, The Clerk of Court is

**DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of

process on Defendants **LANG, COOK, WEBER, DELOIA, MEADE, and CASTELLANO**;

the Clerk shall issue the completed summons.  The United States Marshal **SHALL** serve **LANG,**

**COOK, WEBER, DELOIA, MEADE, and CASTELLANO** pursuant to Rule 4(e) of the

Federal Rules of Civil Procedure.[3]  All costs of service shall be advanced by the United States,

and the Clerk shall provide all necessary materials and copies to the United States Marshals

Service.

    In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1)

personally deliver to or send by registered or certified mail addressed to the civil-process clerk at

the office of the United States Attorney for the Southern District of Illinois a copy of the

---

[3] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Service shall not be made on the Unknown Defendants (John Doe C/O #1 and John Doe C/O #2) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that

his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 4, 2017**

<u>s/J. Phil Gilbert</u>
United States District Judge